## CONRAD ANSCHICKS v. THE STATE.

1. CHANGE OF VENUE.—Where the statutory showing had been made by defendant for change of venue, and the testimony resisting the motion did not attack the character of the affiants supporting the motion, as to truthfulness or intelligence, nor show their want of means of information: *Held*, Error to overrule the motion for change of venue.

2. SAME.—Where the affiants are strong personal and political friends of the accused, and obscure men, residing at the county seat, and the counter-affiants are from different parts of the county, and testify that there had been prejudice such as to warrant the affidavit supporting the motion, but that they believed such feeling had abated, and that they believed a fair trial could be had: *Held*, Error to overrule such motion.

3. SAME.—See facts requiring a change of venue.

4. SAME.—Distinguished from Winkfield v. The State, 41 Tex., 148.

APPEAL from Criminal Court of Calvert, Robertson county. Tried before the Hon. N. W. Battle.

Anschicks was convicted of rape, and punishment fixed at twenty years in the penitentiary.

A motion for change of venue was made, and being resisted by the District Attorney, was overruled. The testimony on the motion is sufficiently given in the opinion.

*Collard & Field* and *H. D. Prendergast,* for appellant.

*George Clark,* Attorney General, for the State.

GOULD, ASSOCIATE JUSTICE.—The result of the investigation, instituted at the suggestion of the District Attorney in opposition to the application for a change of venue, may be summed up as follows: That there had been great feeling and prejudice against defendant—two of the witnesses introduced by the District Attorney say as great as they had ever known to exist against any man; but in the opinion of eight witnesses from various parts of the county, this prejudice had so far sub-

sided that they believed the defendant could have a fair trial. More than one of these witnesses state directly, and nearly all admit inferentially, that there still existed a prejudice against the defendant, and, in the words of one of them, he was "odious to many people."

The affiants all lived in Calvert, the county seat, and ordinarily remained there. Four out of the five were, in the opinion of some of the witnesses, obscure persons, without sufficient means of knowing public sentiment in the county. They were all political friends of defendant. For these reasons some of the witnesses say that they do not regard these four as credible persons, or, as one of the witnesses said, "did not regard their statements as credible," though, as far as he knew, they were credible persons. There was no effort to show that the general reputation of affiants for truthfulness was bad, nor was there any evidence justifying the conclusion that they were not persons of average intelligence. In regard to another one of affiants, who had been postmaster and county treasurer, and whose credibility in ordinary matters was admitted, several witnesses testified that because of his strong political bias and political and personal relations to defendant, they did not regard him as a credible person in this case.

The defendant, on his part, produced another resident of the county, whose character and means of information were not assailed, and who stated that there did exist such a prejudice against defendant that he could not get a fair and impartial trial in the county.

It does not appear that the affiants were persons of such a character, either as to truthfulness or intelligence, as to authorize the conclusion that they were not credible persons. With perhaps a single exception, their character for truthfulness can scarcely be said to have been assailed. If they were persons whose reputation for veracity was bad, that was a fact susceptible of proof. Certainly the fact that they were political and personal friends of the defendant, although their

political prejudices may have been strong, does not justify the assumption that they were not credible persons.

It was not established that they had no such means of information as would justify their affidavit. It was not at all unreasonable that residents of the county seat, where the defendant resided, and where this case had once been tried, should know something of the state of feeling towards him in the county at large. It appeared that the case and the defendant's character had been much talked of. There was a total absence of any affirmative fact negativing the truth of the affidavit. The case differs in its essential characteristics from that of Winkfield *v.* The State, 41 Tex., 148.

It is true that a number of citizens give their opinion that the defendant could get an impartial trial in the county. If many more had testified to the same opinion, this would have constituted no good grounds for overruling the application. (Walker *v.* State, 42 Tex., 360.)

Indeed the testimony introduced in opposition to the change of venue goes far, of itself, to show that the motion should have been granted. From that testimony alone, it would seem unquestionable that at one time the prejudice had been very great, and would have justified the affidavits. The existence of prejudice at the time of the trial was not denied by some of the witnesses, and their opinion of the extent to which it had subsided is but an opinion, in which they were liable to be mistaken.

After making due allowance for the better opportunities of the district judge to form a correct opinion of the true state of feeling in the county, we do not find in the evidence set forth in the bill of exceptions, anything which justified the refusal of the application. Because of this error the judgment is reversed and the cause remanded.

                                        REVERSED AND REMANDED.