## Conrad Anschicks *v.* The State.

1. **Rape — Charge of the Court.** — The court charged that, in order to "constitute the offence of rape by force, the force necessary to be used by the defendant to obtain carnal knowledge of the woman must have been such as might reasonably be supposed to be sufficient to overcome resistance, taking into consideration the relative strength of the parties, and other circumstances of the case. In this case, you must be satisfied from

the evidence that it was the intention of the defendant to have sexual intercourse with L. K., notwithstanding any resistance she might make, and that she resisted defendant, and did not consent to have sexual intercourse with him." *Held*, that this charge was sufficient upon the questions of consent, force, and resistance, under the proofs.

2. SAME — FORCE AND RESISTANCE. — In establishing the offence of rape, the amount of force used on the one hand, and the amount of resistance on the other, must depend upon the relative strength of the parties, and the other circumstances surrounding them at the time, of which the jury must judge by the testimony.

3. SAME — CONSENT. — While unfeigned, positive resistance will show a want of consent, a feigned resistance will not.

4. SAME. — Sexual intercourse with a female under the age of ten years is rape, no matter what the circumstances; and the question of consent, whether obtained by force, threats, or fraud, is wholly immaterial.

5. SAME. — Nor does a fair construction of the provisions of the Penal Code limit the question of assent to the age of ten years; but when it is shown that sexual intercourse is had with one over ten years of age, who is still a child in stature, constitution, and physical and mental development, the party in like manner may be held incapable of giving consent.

6. STATUTE OF LIMITATIONS. — A prosecution for rape is barred unless the indictment therefor is presented within one year.

7. PRACTICE IN THIS COURT. — It is assigned as error that the jury were permitted to take with them in retirement the original indictment, on which was indorsed a previous verdict of conviction. *Held*, that it is the business of counsel, in the first instance, to see that only such papers as were proper were turned over to the jury; and *held, further*, that such an objection, unless properly presented by bill of exception, cannot be considered by this court.

8. NEW TRIAL — PRACTICE IN THE DISTRICT COURT — One of the grounds for new trial in this case was, that the jury received the testimony of a juror as to matters of fact not adduced upon the trial. An affidavit is filed by the foreman of the jury to the effect that he was influenced in his finding by the statement of one of the jurors that he had lived in R. County, and knew that one of the defendant's witnesses was kept by him, and was unworthy of belief. *Held*, that the verdict was vicious, and should have been set aside and a new trial granted. See the opinion for a discussion of the subject

9. MISCONDUCT of the jury, if it affects the fairness of the trial, vitiates the verdict, and may be shown by the voluntary affidavit of a juror. In like manner the verdict may be sustained.

10. PRACTICE. — Leading questions are permitted, even on direct examination of a witness, when it appears that the witness is hostile to the party producing him, or in the interest of the other party, or is unwilling to give evidence, or when an omission in his testimony is evidently caused by want of recollection, which a suggestion may assist.

11. Same in this Court. — Objections to language employed in argument cannot be considered by this court unless properly presented by bills of exception.

Appeal from the District Court of Milam. Tried below before the Hon. S. Ford.

The indictment, filed in the District Court of Robertson County, June 12, 1874, and in the District Court of Milam County, under a change of venue, on the thirtieth day of October, 1876, charged the defendant with the rape of Liney King, on or about April 7, 1874. The trial resulted in his conviction, and his punishment was assessed at five years' confinement in the penitentiary.

The testimony as to the age of the female was somewhat unsatisfactory. Her father testified that he had had three daughters, one (the oldest) born in Arkansas, Liney and a younger, born in Texas, but he could not give the age of any. This witness and his daughters were negroes. Their ex-owner testified that the last witness had two daughters, Lizzie and Liney, but he did not recollect which was the older. If Liney was the older, she was born in Arkansas, in 1863; if she was the younger, she was born in Milam County, Texas, in the spring of 1865. Lizzie, he testified, was dead.

The substance of Liney King's testimony was that, at the time of the offence, she was in Calvert, Robertson County, going to school, and staying with Mary Jane Phillips, who lived at defendant's house. She does not recollect more about the time than that the day was Wednesday. She was sitting in the defendant's house, when he solicited carnal intercourse with her. To this request she responded that she was too young and too small. Defendant then took her up, carried her into an adjoining room, and there, without her consent, accomplished his purpose. She remembered that she hallooed once at least, and bit him on the arm. Defendant hurt her very much when he

penetrated her person. He promised her, after he got through, that if she would not tell he would give her a pair of shoes. Witness told no one but Eliza Delmester, because she was afraid that, if she did, Mary Jane Phillips would whip her. Mary Jane threatened to do so in that event.

The witness knew what the defendant meant when he made the request spoken of, but did not give her consent. Did not notice the condition of her clothes when she went to bed with Aunt Nicey that night; knows, however, that the defendant penetrated her person.

Eliza Delmester testified, in substance, that she lived, at the time of this transaction, in a house opposite and just across the street from the defendant's house. Mary Jane Phillips lived with defendant, and the girl Liney stayed with Mary Jane, at defendant's house, during the daytime, when she was not at school, and slept at night with Nicey Scoggins, who lived in a house in the same yard in which witness's house was situated. Witness and Mary Jane had been out together that evening, and when they returned they separated, each going to their homes. After witness had got some thing to eat, she ran over to Nicey's house, and knocked at the door. Nicey and Liney had gone to bed, but the latter got up and opened the door. There was a light in the room, and as Liney turned to go back to bed, witness saw that she had blood on her nightgown, and asked her, "Lord God Almighty, girl, what is the matter with you?" Liney responded that nothing was the matter, and witness then told her that she had blood on her gown. At this Nicey turned her face to Liney, and asked her what was the matter. Liney responded as before; to which Nicey replied, "You have been letting some of the boys at school fool with you;" which Liney denied. Nicey then asked if she had not been straddling a sapling; to which she responded in the negative. Being asked again what was the matter, she replied that she "did not know;

that it just came that way at school.'' Witness assured her, then, that she should not be whipped, and told her to tell the truth. She then said that the defendant did it.

Witness then went over and brought Mary Jane Phillips, who, when she was told of it, ordered the girl to go over with her to defendant's, and said that if defendant had done that, he should take charge of her; and she went. Witness went over the next morning; saw Liney sitting near the stove; saw blood on the bed and floor in the room where Mary Jane usually slept. Liney then told witness that Mary Jane had threatend to whip her if she told that defendant did it.

Witness then asked defendant if he was not ashamed of his treatment of the child. He answered in the negative, and added that some one had to be first, and it might as well be he. Witness afterwards went to the mayor's office, and filed a complaint against the defendant for rape. Her reason for this was, that several had told her there was danger of Liney's dying there, and possibly involving them all in a charge of murder. Witness, who was a medium-sized woman, placed her hand on her breast, and said that Liney was about that high to witness. Did not know her age.

Physicians testified that they were called in, by subpœna of the mayor of Calvert, in April, 1874, and examined the person of Liney. Found her injured as though her privates had been penetrated by some blunt instrument. The injuries were such as could have been inflicted by a grown-up man.

The substance of the testimony of Mary Jane Phillips, for the defence, was that, when she returned that night, after having been absent for about one hour, she found the defendant sitting up reading a newspaper, and Liney sitting near, studying her lesson. She described the different rooms of the house. Noticed nothing unusual or confused about the girl. Witness told her that it was time she had

gone to bed, and she put up her book and went over to Nicey's. Witness found no blood, except on the floor of the room in which she usually slept, and on the bed. The beds did not appear disordered. Liney slept with witness that night, and got up as usual next morning, and assisted in setting the table for breakfast, and waited on the table. Witness then noticed that she did not look well, and directed her to go lie down. When witness was cleaning up the house, after that, she found Liney's drawers, which opened at the sides, rolled up and crowded into the wood-box. There was no blood on them. Witness did not threaten to whip Liney if she told on defendant. Liney told witness that Eliza Delmester told her to say that it was defendant who outraged her. This last statement was denied by Liney.

Nicey Scoggins, for the defence, testified substantially to the facts as detailed by Eliza Delmester, up to the time that Eliza went for Mary Jane Phillips. Continuing, she said that Liney told her that defendant told her that, if she would consent, she could go to the store and get her a pair of fine button-shoes. Witness did not know the age of the girl, but knew that she was very forward; had commenced to dress, fix up her hair, and act like a woman. During the day she stayed with Mary Jane, and witness had often noticed that when defendant would come home, and Mary Jane would be at the house of witness, washing, Liney would suggest various excuses for going over to defendant's house. Witness called Mary Jane's attention to this, and thereafter the girl was not permitted to be about the house alone with defendant. This witness testified that Liney slept with her that night; that she had on drawers when she went to defendant's house that evening, but had none on when she came back to witness's house.

*W. H. Hamman*, and *Davis & Beall*, for appellant. The court erred in its charge to the jury, in failing to in-

struct the jury that it should appear from the evidence that Liney King made such resistance as she was able to do under the circumstances, considering the relative strength of the parties. In the second and third paragraphs of the charge, the court instructed the jury that the force necessary to be used by defendant to obtain carnal knowledge of the woman must be such as reasonably might be supposed to be sufficient to overcome resistance, etc.; and that, to warrant a conviction, the jury must be satisfied that it was the intention of the defendant to have sexual intercourse with Liney King, notwithstanding any resistance she might make, and that she resisted defendant, etc.; but failed to charge the measure of resistance to be used by Liney King to prevent carnal knowledge of her person.

To correct this omission of the court, defendant asked special instructions, which were refused by the court, and he reserved a bill of exceptions to the charge of the court and the refusal to give instructions asked by defendant. *Rogers* v. *The State*, 1 Texas Ct. App. 191; *Jenkins* v. *The State*, 1 Texas Ct. App. 355; *The People* v. *Dohring*, 59 N. Y. 374; *The State* v. *Burdgor*, 53 Mo. 65; *The People* v. *Benson*, 6 Cal. 221; *The People* v. *Brown*, 47 Cal. 447; *The People* v. *Quin*, 50 Barb. 132; *Regina* v. *Hallet*, 9 Car. & P. 748.

The court erred in refusing the charges asked by the defendant for the purpose of correcting the misdirection of the judge's charge in the particular referred to in the first assignment of error. Same authorities.

The court erred in its charge, in failing to instruct that it should appear from the evidence that the offence was committed within a year next before the finding of the indictment. *Drummond* v. *The State*, 4 Texas Ct. App. 151; *White* v. *The State*, 4 Texas Ct. App. 489; *Bingham* v. *The State*, 1 Texas Ct. App. 25; *Hardin* v. *The State*, 4 Texas Ct. App. 357; *Williams* v. *The State*, 1 Texas Ct. App. 94.

It was error to allow the jury to take with them, in their retirement to consider of their verdict, the indictment, with the verdict of a former jury legible thereon, which was calculated to prejudice the defendant.   *Cook* v. *The State*, 4 Texas Ct. App. 267.

We assign as error the misconduct of the jury in receiving the testimony of a juror as to matters of fact not adduced in evidence at the trial, as shown by affidavit attached to the motion for a new trial.   The jury received evidence of one of the jurors (Charles Carr), and the action of the foreman of the jury was influenced thereby, to the prejudice of defendant.   Pasc. Dig., art. 3137 ; *Bowen* v. *The State*, 3 Texas Ct. App. 628 ; *Wharton* v. *The State*, 45 Texas, 5.

The court erred in allowing the State's attorney to ask the prosecutrix, a witness for the State, if the defendant penetrated her body at a given place, the question being leading, and calculated to suggest the desired answer. Greenl. on Ev., sect. 434 ; *McCarty* v. *The State*, 4 Texas Ct. App. 470 ; *Davis* v. *The State*, 43 Texas, 189.

The court erred in allowing the prosecuting attorney to use language, in *his closing argument*, calculated to prejudice the defendant, and, among other things, " that the defendant, though his skin is white, his heart is blacker than the midnight of hell ; " " he is more of a brute than any negro in the jungles of Africa."   2 Bishop's Cr. Proc. 634.

The evidence does not support the verdict, and the court erred in refusing a new trial.   There is a fatal variance between the name of the person charged to have been raped, as set out in the indictment, and as shown in the proof; the indictment naming Liney King, while witness says her name is " Malina " King.   *Haney* v. *The State*, 2 Texas Ct. App. 5, 505 ; 1 Va. Cas. 109 ; Whart. Cr. Law (4th ed.), sects. 307, 308.

The verdict is against the evidence.   1 Texas Ct. App. 693 ; 43 Texas, 189 ; 30 Texas, 448 ; 40 Texas, 293.

*Thomas Ball*, Assistant Attorney-General, for the State. There was no error in refusing the charge set out in appellant's first assignment. The statute was properly charged upon the subject of rape (Pasc. Dig., art. 2185); and the charge correctly defines assault and battery (Pasc. Dig., art. 2137), which was all that was required. *Jenkins* v. *The State*, 1 Texas Ct. App. 356. The female was a child, exceeding eleven years old, about three and one-half feet high, and incapable of much resistance. 2 Whart. Cr. Law, sect. 1142, note *a*.

The substance of the special charges being embodied in the general charge, the court did not err in refusing them. There is no occasion to instruct on the reasonable doubt in every subdivision of a charge; it is sufficient if found in any subsequent part of the charge, which charges it between the degrees of the offence. There are no degrees in rape.

The evidence shows that the offence was committed in April, 1874, and the indictment shows that it was filed in Robertson County District Court, April 12, 1874. Defendant asked no special charge on limitation, and the court charged generally that, "if the jury believe from the evidence that the defendant, about the time and in the county alleged," etc., which was sufficient. See the general doctrine laid down in *White* v. *The State*, 4 Texas Ct. App. 488.

As to the reception by the jury of evidence not before them on the trial. See 42 Texas, 355; 41 Texas, 556.

Objection to language used in argument should be taken at the time, and brought up on bill of exceptions. Rule 121, for District Courts.

WINKLER, J. This is an appeal from a judgment of conviction for rape. The indictment charges that this appellant, "on or about the seventh day of April, A. D. 1874, in the county of Robertson, and State aforesaid, with force

and arms, in and upon one Liney King, a female, in the peace of God and the said State then and there being, violently and feloniously did make an assault, and her, the said Liney King, then and there forcibly and against her will, and without her consent, feloniously did ravish and carnally know; contrary," etc.    On a former trial, in Robertson County, the appellant was convicted; and, on appeal to the Supreme Court, the judgment was reversed because of an erroneous ruling on a motion for change of venue. 45 Texas, 148.    Subsequently the venue was changed from Robertson to Milam County, where the appellant was again tried and convicted; and from this last conviction the present appeal is prosecuted, a motion for a new trial having been overruled.    Several errors have been assigned as cause for reversal of the judgment, which have been urged here in an able brief and zealous argument by counsel for the appellant, and with an earnestness indicative of sincerity, and which seems to demand at our hands proper consideration.

The first and second errors complained of assume that the jury should have been instructed to the effect that it should appear from the testimony that the female upon whom the offence was charged to have been committed, made such resistance to her assailant as she was enabled to make under the circumstances, considering the relative strength of the parties; and that this resistance should have been continued until her person had been penetrated by the defendant, in order to warrant a conviction.    And it is argued that the charge of the court was faulty in not presenting these views of the law, and that it erred in refusing special instructions asked, intended to correct the error and supply the supposed omission.    On this branch of the subject the court charged: "To constitute the offence of rape by force, the force necessary to be used by defendant to obtain carnal knowledge of the woman must have been such as might reasonably be supposed sufficient to overcome resistance,

taking into consideration the relative strength of the parties, and other circumstances of the case. In this case you must be satisfied from the evidence that it was the intention of the defendant to have sexual intercourse with Liney King, notwithstanding any resistance she might make, and that she resisted defendant, and did not consent to have sexual intercourse with him."

We are of opinion that the charge of the court sufficiently instructed the jury, both as to the amount and kind of force which should be employed by the accused, as well as the nature and character of resistance to be made by the female, to warrant conviction. It is provided by the Code that the definition of "force," as applicable to assaults and batteries, applies also to the crime of rape; and, further, "it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties, and other circumstances of the case." Penal Code, art. 542; *Jenkins* v. *The State*, 2 Texas Ct. App. 346.

The charge, in so far as *force* by the defendant was concerned, was, in substance, the language of the statute; and we are of opinion that, so far as it concerns the subject of resistance by the female, it clearly intimates that this, too, is to be measured by the relative strength of the parties, and the other circumstances of the case. To attempt a more definite rule would be impracticable. All that the law seems to require is, that the amount of force on the one hand, and the amount of resistance on the other, must necessarily depend on the relative strength of the parties and the other circumstances surrounding the parties at the time, of which the jury must determine by the testimony. We are of opinion the defendant has no just ground of complaint at this charge, and that there was no error in refusing the special charge asked by his counsel.

The whole subject of resistance in such cases relates to, and is referable alone to, the question as to whether the act

was committed with or without her consent. A feigned resistance would not show want of consent, whilst an unfeigned, positive resistance would certainly tend in that direction. It is matter of evidence, to be considered by the jury, who alone are authorized to judge of the credibility of witnesses.

Carnal connection with a female under ten years of age is rape, no matter what the circumstances; and the question of consent of the female, or whether there was force, threats, or fraud employed in obtaining the connection, or not, is wholly immaterial. Penal Code, art. 523. Females under this age are, in contemplation of law, incapable of comprehending the nature of the act or judging of its criminality, and hence are incapable of consent, or of resisting fraud, force, or threats. After they have attained the age of ten years, our Penal Code presumes that they have obtained sufficient information as to the enormity of this crime, and law no longer holds that she is incapable of giving her consent; and so, agreeably to the Code, it is not rape for a male to have carnal knowledge of a female over ten years of age, with her consent. Penal Code, art. 523.

Yet we are inclined to the opinion that, by a former construction of the provisions of the Code, the law does not wholly abandon the youthful female to the abuse of the licentious and depraved, but permits the jury trying a charge of rape, as among the "*other circumstances of the case*" mentioned in the Code, to inquire into the age, development, and moral training of a youthful female upon whom this foul crime is charged to have been committed, in so far as those considerations bear upon the question of assent, or whether the crime was committed without her consent. Our idea on this subject is expressed by Mr. Wharton, in this wise: "An infant under ten years of age cannot consent to sexual intercourse, so as to rebut the presumption of force. And it would seem that when sexual intercourse is had with one over ten, who is still a child

in stature, constitution, and physical and mental development, the court may be justified in saying that the party was in like manner incapable of giving consent.'' The turpitude of the ravisher, if guilty, ought to be increased in proportion to the helplessness of his victim, from whatever cause.

We are of opinion, as to the third error assigned, that the attention of the court should have been called to this subject when the jury were being instructed as to the law of the case at the time of the trial; which, from a statement appended to a bill of exceptions signed by the judge, appears not to have been done. Still, the Code provides that an indictment for the offence of rape may be presented within one year, *and not afterwards*. Code Cr. Proc., art. 184. So that, if the indictment in this case was not presented within one year from the time the offence was committed, the prosecution was barred by limitation, and cannot be maintained.

It is assigned as error that the court erred in permitting the jury to take with them, in their retirement, the indictment, upon which was written the verdict of a former jury; which, it is claimed, was to the prejudice of the defendant. This subject is not so presented by the record as that we are authorized to inquire into it. It was the business of counsel to see to it that the jury were permitted to carry with them such papers only as were proper to be used in their retirement; and if the attention of the court had been called to the subject, and it had refused to give the proper direction, it should have been presented by bill of exceptions. *Cook* v. *The State*, 4 Texas Ct. App. 256. In practice, it is usual and proper for the jury in charge of a criminal case to take the indictment with them in their retirement. If, in any case, there should be any valid reason why this should not be permitted, it would be an easy matter to obviate it by the use of proper caution at the trial, and before the jury retired.

The fifth assignment of error is, alleged misconduct of the jury in receiving the testimony of a juror as to matters of fact not adduced in evidence at the trial. The statement under this assignment is, that the jury received the evidence of one of the jurors, and that the action of the foreman of the jury was influenced thereby, to the prejudice of defendant. This is one of the grounds upon which the motion for a new trial is based. There is appended to the motion for a new trial an affidavit, purporting to have been made by the juror who signed the verdict of the jury as foreman, and which is stated to have been voluntarily made, to the effect that, after the jury retired to consider of their verdict, one of the jurors stated to the jury, while they were considering of their verdict, and before they had agreed, that he had lived in Robertson County, and knew the witness Mary Jane Phillips, who testified for the defendant on the trial; that she was unworthy of credit; that she was kept by Anschicks at the time, and that the whole of her testimony was concocted between them; and that the action of affiant, in rendering a verdict, was influenced thereby, to the prejudice of the defendant.

It is shown by the statement of facts that the witness named in the juror's affidavit testified on the trial. It does not appear that her testimony was attacked or her credibility called in question. We cannot say that her testimony, if true, was unimportant. The statement made to the jurors by one of the jurymen, as stated in the affidavit, is more significant than it would otherwise be, from the fact that the offence is charged to have been committed in Robertson County, and that the venue had been changed from that county because of prejudice against the defendant.

There are nine grounds, in cases of felony, upon which new trials will be granted. These are set out in art. 672 of the Code of Criminal Procedure, where it is expressly stated that these are the only grounds upon which new trials shall be granted. The seventh ground is, where the jury,

after having retired to deliberate upon a case, have received other testimony, or where a juror has conversed with any person in regard to the case, etc.   The eighth ground is where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial.   The same article further provides that it shall be competent to prove such misconduct by the voluntary affidavit of a juror, and that a verdict may in like manner be sustained.   Pasc. Dig., art. 3187.   It must be shown that the misconduct affected the fairness of the trial.   *Jack* v. *The State*, 26 Texas, 4.

Other misconduct on the part of one of the jurors is complained of in the motion for a new trial, and is supported by affidavits, and is the subject of a separate assignment of errors.   This other misconduct, however, is so explained by counter-affidavits that it would not alone vitiate the verdict.   But as to the matter set out in the voluntary affidavit of the juror, as mentioned above, no explanation whatever is offered.   The juror swears that the statement set out in his affidavit did influence his verdict, to the prejudice of the defendant.   And we are of opinion that, when considered in the light of surrounding circumstances, it was well calculated to have that effect.

In *Wharton* v. *The State*, 45 Texas, 2, a question arose which involved, to some extent, the same principle as the present case ; and there, too, as here, there was conflicting testimony.   In Wharton's case, as reported, after the jury had retired, they returned into court and asked the question, " Can we judge a witness just by what he says on the stand, and not by what we know of him privately ? "   The judge, in answering the question, repeated his former charge, and gave to the jury some general directions as to the manner and means by which the jury might arrive at a conclusion as to the credibility of witnesses ; and charged that, they being the exclusive judges of the testimony, " the court cannot inform you, in reference to the question you

put, any further." The judge did not answer the question put by the jury. The court, the present chief justice delivering the opinion, after referring to the conflict between the witnesses for the defence and those for the State, say : " It was evidently, therefore, of the utmost importance to the appellant that the case should have been submitted to the jury fairly and impartially, by the instructions given them by the court, and in a manner in no way calculated to bias or prejudice them against the witnesses who testified on his behalf; and that the law of the case, to which the testimony of the witnesses was to be applied, should be plainly stated." Further on they say : " Plainly, they (the jury) wished to know whether, aside from these considerations, they were at liberty to determine the credit to which the witnesses were entitled, or the credence which they should give to their statements, from what the jury, or some of them, might know of the witnesses, or of the matters about which they testified. The court, however, instead of answering this plain and simple question, instructed the jury, at some length, upon the rules and principles by which they might be governed, * * * in a way I cannot think entirely unobjectionable, as ' calculated to rouse the sympathies or excite the passions of the jury;' " citing Code Cr. Proc., art. 575. The court, after discussing the well-established rules and principles of law by which the credibility of witnesses is to be impeached, say : "And if the jury desire to determine the credence which they will give their evidence by these rules, the court, when asked, should instruct the jury in regard to them ; otherwise, they may mistakenly suppose the testimony of a witness is impeached, and entitled to no credence, which, if better advised of the law, they would believe without hesitation ; " citing art. 616 of the Code of Criminal Procedure, to the effect that, " if any juror has knowledge of a fact connected with the cause on trial, it is his duty to make it known before the cause is finally submitted. Should he fail to do this, he

may come into the court with the other jurors, after their retirement, and shall be sworn as a witness, and give his testimony." The opinion concludes as follows : "As it is, we cannot say but what the appellant has been convicted on testimony wholly irrelevant and inadmissible, given without his knowledge, and by witnesses with whom he has not been confronted." The judgment was reversed.

And so we say of the present case. · It is apparent that, in Wharton's case, the jury were permitted to consider and judge of the credibility of the witness by other means than by what had transpired on the trial, by the failure of the court to answer the question propounded by the jury, which is the same as that in the present case in principle, although the question arose in a different form. The opinion of one of the jurors, not testified to at the trial, and which was not evidence in any legal sense, did, agreeably to the affidavit of the juror, influence the verdict of the jury, to the prejudice of the appellant, and no effort was made to contradict or to neutralize the effects of the juror's affidavit. On this ground alone, under the circumstances, we are of opinion that the verdict was vicious, and should have been set aside. The present case differs from *Gilleland* v. *The State*, 44 Texas, 356, in that the statement of the jurors in that case was met by counter-affidavits.

The sixth error assigned needs no further notice than what is said as to the fifth.

It is complained, in the seventh assignment of error, that the court erred in permitting the counsel for the State to propound leading questions to the prosecuting witness. We are of opinion that, when we take into consideration the circumstances under which those questions were permitted, as shown by the explanations given by the judge in signing a bill of exceptions to his ruling, that the questions were admissible. Leading questions are permitted in some cases even on direct examination, " namely, when the witness appears to be hostile to the party producing him, or in

the interest of the other party, or unwilling to give evidence, or when an omission in his testimony is evidently caused by want of recollection, which a suggestion may assist." 1 Greenl. on Ev. (6th ed.), sect. 435.

It is stated in the eighth error assigned that the court erred in allowing the prosecuting attorney, in his closing argument, to use this language: " That the defendant, though his skin is white, his heart is blacker than the midnight of hell. He is more of a brute than any negro in the jungles of Africa; " which, it is claimed, was to the prejudice of the defendant.

We are not informed as to the circumstances under which those strong expressions were uttered, or what called them forth; and whilst we cannot approve the language used, yet we are not prepared to say that it was not a merited comment upon the conduct of the appellant, if the testimony of some of the witnesses given on the trial is to be believed. Still, we are unable to perceive that strictures of this character could perform any legitimate service, and they are not to be encouraged. We make no ruling on the question, however, because it is not properly presented for revision. Matters of fact relied on for a new trial must be shown by bill of exceptions, or otherwise by the record, to entitle them to consideration on appeal. *Cook* v. *The State*, 4 Texas Ct. App. 265.

The remaining error necessary to be noticed is the refusal of the court to grant a new trial. The most material of the grounds of the motion have already been passed upon, so far as likely to arise on another trial.

The theory of the defence does not controvert the fact of carnal knowledge of the female, even to the extent required by law in prosecutions for rape, but controverts only the want of consent on her part. On this subject the proofs are conflicting and unsatisfactory; and on the subject of outcry and resistance, and prompt complaint after the injury, they are equally so; and, to our minds, must necessarily have

been strengthened, and the verdict influenced, by the statements of the juror made to his fellows after the jury had retired to consider as to their finding, and which were not testimony in any legal sense whatever. As was said by the Supreme Court in Wharton's case, already cited : "As it is, we cannot say but what the appellant has been convicted on testimony wholly irrelevant and inadmissible, given without his knowledge, and by a witness with whom he has not been confronted."

We are of opinion the court below erred in overruling the motion for a new trial, and for this error the judgment must be reversed.

*Reversed and remanded.*