### JAMES WHARTON v. THE STATE.

1. CRIMINAL PRACTICE.—In a trial for theft the jury returned into court and asked, "Can we judge a witness just by what he says on the stand, and not by what we know of him privately?" To this question the court did not reply, but proceeded to give them instructions upon the rules governing juries in weighing testimony, &c.: *Held*, Error. The court was not authorized to do more than answer the question and inform them that they should decide the case upon the evidence adduced upon the trial.

2. SAME.—The question evidently intimated that one or more of the jurors had knowledge of facts touching the credibility of one or more of the witnesses, and which was not in evidence; the juror should have made known such facts, and being sworn as a witness should have given his testimony. (Paschal's Dig., art 3079.)

APPEAL from the Criminal District Court of Calvert. Tried below before the Hon. N. W. Battle.

James Wharton was indicted for theft of cattle. Upon his trial, after the witnesses for the State had made out the case as charged, two brothers of the accused testified that William Wharton had bought twenty head of cattle of a son of the alleged owner, being a remnant left in the range on his removal from the neighborhood; that the accused had authority from William Wharton, and had gathered the cattle alleged to have been stolen for William Wharton, and under his authority, and in the range said cattle ran. This was corroborated by several other witnesses.

After the jury had retired, they returned into court and asked the question, " Can we judge a witness just by what

he says on the stand, and not by what we know of him privately?"

To which the court replied: "In answer, the court repeats the former charge, that the jury are the exclusive judges of the facts given in evidence and the weight to be given to those facts; also of the credibility of the witnesses and of the truthfulness or falsity of their statements. In passing on the credibility of a witness or witnesses, you have a right to take into consideration the manner of his or their testimony, the opportunities he or they may have had to be informed as to the facts about which he or they may testify, his or their relationship to the accused, or his or their want of such relationship and disinterestedness. You have a right to judge of a witness or witnesses through what you may have heard and observed of him or them while testifying; you being the exclusive judges of the testimony, the court cannot inform you in reference to the question you put any further."

The jury found defendant guilty, and fixed his punishment at five years in the penitentiary, and defendant appealed.

*W. H. Hamman*, for defendant.

*George Clark, Attorney General*, for the State.

MOORE, ASSOCIATE JUSTICE.—The appellant was indicted for theft of cattle. The testimony before the jury was manifestly conflicting. If the case were to be decided upon the evidence for the State, and without giving credit to the testimony of the witnesses for appellant, the jury could have little doubt that appellant was guilty of the offense with which he is charged. If, on the other hand, the witnesses for appellant are entitled to credit, it can scarcely be reasonably inferred that the cattle were taken with a felonious intent, though it is admitted that the ownership and asportation of them were clearly and satisfactorily established by

the witnesses for the State. It was evidently, therefore, of the utmost importance to appellant that the case should have been submitted to the jury fairly and impartially by the instructions given them by the court, and in a manner in no way calculated to bias or prejudice them against the witnesses who testified on his behalf, and that the law of the case to which the testimony of the witnesses was to be applied, should be plainly stated.

The original charge of the court seems to us unobjectionable, and fully sufficient to have enabled the jury to have properly decided the case on the evidence, of the weight and credibility of which they had been correctly informed; they were the exclusive judges. The jury, however, not feeling satisfied to determine the case without further instruction, came into court, and asked the following question, viz:

"Can we judge a witness just by what he says on the stand, and not by what we know of him privately?"

The Code of Criminal Procedure provides that "the jury, after having retired, may ask further instructions of the judge touching any matter of law, which shall be given them in writing; but no charge shall be given except on the particular point on which it is asked." (Code Crim. Pro., art. 614.) Now, evidently, the question asked of the court does not import that the jury wished to be instructed how they were to be guided in weighing and determining the credit which they should give to the testimony of the witnesses, or whether in doing so they could look to and consider the character of their statement, the manner in which they deposed, their opportunity of being informed of the matters about which they testified, their relationship to the accused, or other cause of bias or prejudice, either admitted by the witness or otherwise apparent from the testimony before them. Plainly, they wished to know whether, aside from these considerations, they were at liberty to determine the credit to which the witnesses were entitled or the credence which they should give to their statements, from what the

jury or some of them migl    know of the witnesses or of the
matters about which the)    tified.    The court, however,
instead of answering this    n and simple question, in-
structed the jury at some le.    upon the rules and princi-
ples by which they might i    governed in passing on the
credit of the witnesses, both i___a their manner of testifying
and the facts appearing in the course of the trial, in a way
which I cannot think entirely unobjectionable, as "calcu-
lated to rouse the sympathy or excite the passions of the
jury," (Code Crim. Pro., art. 595,) and closed by telling them
that the court could not "inform you in reference to the
question you put any further."

It is unquestionably the privilege of the jury to give such
credence to the witnesses who testify before them as they
see fit and as they believe they are entitled to.    Certainly
they are required by no principle or rule of law, and cannot
be coerced by instructions of the court, to regard testimony
as true which they believe to be false, or to give credence to
the statement of a witness who they are firmly convinced
is not entitled to credence.    But, nevertheless, there are
well-established rules and principles of law by which the
credibility of witnesses is to be impeached.    And if the jury
desire to determine the credence which they will give their
evidence by these rules, the court, when asked, should in-
struct the jury in regard to them; otherwise they may mis-
takenly suppose the testimony of a witness is impeached
and entitled to no credence, which, if better advised of the
law, they would believe without hesitation.

The code has not left the contingency suggested by the
question asked by the jury unprovided for.    It says: "If
any juror has knowledge of a fact connected with the cause
on trial, it is his duty to make it known before the cause is
finally submitted.    Should he fail to do this, he may come
into the court with the other jurors after their retirement,
and shall be sworn as a witness, and give his testimony."
(Code Crim. Pro., art. 616.)

If the court had informed the jury that they should decide the case upon the evidence adduced upon the trial, and not from anything which they or any one of them might "privately" know, the fact supposed to be known by the jury might have been given in testimony under this article of the code, and such weight could then have been given it as it was legally entitled to. As it is, we cannot say but what appellant has been convicted on testimony wholly irrelevant and inadmissible, given without his knowledge, and by witnesses with whom he has not been confronted.

REVERSED AND REMANDED.