SAM GARDNER v. THE STATE.

No. 4063.   Decided November 11, 1908.

Rehearing Denied June 23, 1909.

**1.—Attempt to Rape—Indictment—Misspelling.**

Where upon trial for assault with an attempt to rape the word grand in the word grand jurors was spelled "gardn;" the court could look to another count in the indictment to make the count upon which defendant was tried intelligible, and the word "aforesaid" relating back to the beginning of the indictment to the words "grand jurors," made the misspelled word unnecessary, and the indictment was sufficient.

**2.—Same—Charge of Court—Supplementary Charge.**

Where upon trial for attempt to rape the court gave his general charge, and also at the same time a supplementary charge, the jury could not have been misled into the belief that the supplemental charge was not a part of the general charge.

**3.—Same—Charge of Court—Requested Charges.**

Where upon trial for attempt to rape the court charged correctly on all the issues raised by the evidence, there was no error in refusing special charges on the same issues.

**4.—Same—Evidence—Res Gestae.**

Upon trial for attempt to rape there was no error in admitting the statement made by the prosecutrix a few moments after the occurrence of the alleged attempt to rape, showing that defendant was in her room and had hold of her, etc.; in connection with the defendant's testimony admitting that he was in said room, and showing a continuous transaction, this was res gestae.

**5.—Same—Evidence—Motive.**

Upon trial for attempt to rape there was no error to show defendant's motive in that he left the house of the prosecutrix after the assault, moving his property with him.

**6.—Same—Evidence—Res Gestae—Shorthand Facts.**

Upon trial for attempt to rape there was no error in admitting in evidence the fact that defendant had a gun under his bed, and that on the night of the alleged assault he was heard handling the gun in his room, after he had been charged with the offense.

**7.—Same—Additional Instructions—Change of Law.**

Under the former law the trial judge was inhibited in any case from giving other charges except on application of the jury or the party or his counsel; this rule, however, in the adoption of the Revised Statutes of 1879 was omitted in the revision, and the judge can call the jury back at their request or at his own volition, and explain his charges to the jury.   Following Benavides v. State, 31 Texas Crim. Rep., 173, and other cases.

Appeal from the District Court of Bosque.   Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of aggravated assault; penalty, a fine of $500.

The opinion states the case.

*E. R. Pedigo* and *J. P. Ward,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of an aggravated assault, and his punishment assessed at a fine of $500 and twelve months confinement in the county jail. The indictment contains two counts, as follows: "That Sam Gardner, on or about the 5th day of September, A. D. One Thousand Nine Hundred and Six (1906), and anterior to the presentment of this indictment, in the county of Bosque, and State of Texas, did then and there unlawfully make an assault in and upon the person of Cora Goyne, a woman, and did then and there, by force, threats and fraud, attempt to ravish and have carnal knowledge of the said Cora Goyne, without her consent.

"And the gardn jurors aforesaid, upon their oaths as aforesaid, do further present in and to said court that heretofore, to wit: on or about said date, in said State and county, the said Sam Gardner did then and there make an assault with intent then and there to commit rape in and upon one Cora Goyne, a woman, by then and there attempting by force, threats and fraud, to ravish and have carnal knowledge of the said Cora Goyne, without her consent." The court presented to the jury only the second count of the indictment. Appellant insists the second count of the indictment is defective because the same, instead of saying "the grand jurors aforesaid," mis-spelled the word "grand," and it reads, as above stated, "gardn jurors aforesaid." It is a well known rule of this court that we will look to one count in an indictment to make intelligible another count. If the word misspelled had been left out entirely, still the second count would have been a good count. It would have read, "the jurors aforesaid." The word "aforesaid" would clearly relate back to the beginning of the indictment which says "the grand jurors." So we take it that the court did not err in submitting said count on the ground that same was defective.

The motion for a new trial in this case covers nineteen pages of the transcript rendering it practically impossible to review same seriatim in the length of an ordinary opinion, but we have read all of appellant's criticisms upon the charge, and very carefully the charge of the court. We wish to say in advance that the charge of the court is correct and that it was not necessary to give any of appellant's special charges, because same, as far as applicable to the facts of this case, were covered by the main charge of the court. It appears that the court gave a general charge and then supplemented the general charge with an additional charge. The general charge contains this clause, "you will be governed by this charge as the law in this case." The supplemental charge was given contemporaneously, of course, with the main charge and the jury could not have been misled into the belief that the supplemental charge did not contain the law, or was not part and parcel of the general charge given by the court. The court charged on assault to rape and aggravated

assault, and charged in every possible way that could be suggested that if the appellant had reason to believe and did believe that his advances towards prosecutrix would not be objectionable to her, or if she invited said advances, or if they had a reasonable doubt of these facts to find him not guilty. So we take it, as suggested above, the charge covered every possible phase of the evidence in this case.

Bill of exceptions No. 1 shows the State introduced the witness Jeff Goyne, father of prosecutrix, who testified, among other things, that between twelve and one o'clock on the night of the disturbance at his house that he heard his daughter, the prosecuting witness, scream and call to him from an adjoining room where she was sleeping, and "I ran into her room as quickly as I could get there; she stated that there was somebody in her room." That he called to Mr. Gardner, the defendant, who was rooming in the next and adjoining room to his daughter and asked him if it was he that had been in his daughter's room, and defendant said that it was, but that he went there through a mistake and that he heard a terrible racket in the other room, which was the parlor, and did not find anything and came back and stepped in the prosecuting witness' room to see what was going on in there. That his daughter was crying when he got into her room and that he did not know whether she said anything else or not. The witness said: "We got her out of her room into ours as quick as we could, and she then told us that the man was down by the side of her bed and had hold of her hand when she woke up and called to me. She stated that the man also said, 'Hush! hush! I'll go back; don't call your papa.' This statement was made to me by my daughter not over three or four minutes from the time that she called to me from her room." Appellant objects to said testimony because the prosecutrix had testified to the same facts, and no evidence had been introduced, even remotely to contradict her statement, and said testimony of said witness was not admissible as original testimony and because it was shown that prosecutrix had made an outcry and witness had responded to the same; because it was no part of the res gestae and was not in rebuttal. The court in his explanation to the bill says that the conversation of appellant with his daughter was one continuous transaction, and the defendant afterwards took the stand himself and testified that he was in the girl's room, and that she was lying in her bed on the front part of the bed. "I stood there about a second and she raised up on her right elbow and beckoned to me twice, and when she did that I started to walk where she was, when I noticed that the door was open which led into the dining-room, which was her father's room, and I tried to keep from walking any more upright that I could help, when I got to the bed she had whirled over on her back and was lying with her head next to the corner of the bed next to me, with her feet on the opposite side, and just as I got to the bed she reached out her right hand and taken me by the left hand." This statement

was clearly part of the res gestae, and, as suggested in the explanation of the court, was one continuous transaction and the sheer fact that appellant had not put witnesses on to impeach the prosecutrix would not render inadmissible said statements.

Bill No. 2 shows that the State proved by Jeff Goyne, prosecutrix father, that appellant left his, witness', house and took with him his trunk, delivery wagon and shotgun. Appellant objected to this testimony on the ground that same was irrelevant, immaterial and greatly prejudicial to the rights of defendant. Further that it was not shown that the prosecutrix knew that he took his gun, and was not admissible to prove threats. The court allowed the bill with the explanation that defendant's conduct and action immediately before the transaction and soon afterwards are always admissible, and in this case the fact that defendant was moving his property away was a circumstance to be considered by the jury as to what the defendant's motive was in connection with all the other facts and circumstances in the case. The testimony was clearly admissible.

Bill No. 3 shows that Jeff Goyne, after testifying to the facts as shown in bill No. 1, stated that after the witness got in his own room he heard a noise like the defendant was dragging a gun from under the bed and threw a cartridge into it. Witness stated, "It went like a gun break, and I am satisfied it was. It sounded like a gun." That he knew where defendant kept his gun; that he kept it under his bed. The court appends this explanation to the bill: It comes within the rule of shorthand rendering of facts and is admissible and because it was a part of the res gestae of the transaction, and because the defendant admitted in his testimony, as shown by the stenographer's report in this case, that he did keep his gun under the bed. That the evidence was further admissible to explain to the jury why defendant was permitted to stay in the house after having been charged with such a serious offense against his daughter. Under the explanation of the court the testimony was admissible.

We have carefully reviewed all of appellant's assignments of error and hold that none of them are well taken. The evidence clearly supports the verdict.

Finding no error in the record, the judgment is in all things affirmed.

*Affirmed.*

ON REHEARING.

June 23, 1909.

BROOKS, JUDGE.—This case was affirmed at a former sitting of this court, and now comes before us on motion for rehearing.

Appellant contends this court erred in overruling and in not sustaining his assignment of error wherein the court's action in attempting to answer the written request of the jury for further instructions is complained of. To support his contention appellant cites

us to the following authorities: Willson's Code of Criminal Procedure, art. 734; Lee v. State, 44 Texas Crim. Rep., 460, 72 S. W. Rep., 195; Bonner v. State, 29 Texas Crim. Rep., 223, 15 S. W. Rep., 821; Taylor v. State, 42 Texas, 504; Newman v. State, 43 Texas, 525; Whorton v. State, 45 Texas, 2; Chamberlain v. State, 2 Texas Crim. App., 451; Garza v. State, 3 Texas Crim. App., 287; Hannahan v. State, 7 Texas Crim. App., 610; Post v. State, 10 Texas Crim. App., 579; Shipp v. State, 11 Texas Crim. App., 46; Granger v. State, 11 Texas Crim. App., 454; McDonald v. State, 15 Texas Crim. App., 493; Mapes v. State, 13 Texas Crim. App., 85. The case of Lee v. State, supra, as we understand it, has no application to the question here under consideration. The rest of the authorities cited were under the old code. The authorities cited by appellant properly announced the law as it formerly existed. After the retirement of the jury the trial judge was inhibited in any case from making any further charge, unless on application of the jury, or a party or his counsel. This rule, however, was changed on the adoption of the Revised Statutes of 1879, the inhibition having been omitted in the revision. See Benavides v. State, 31 Texas Crim. Rep., 173. The judge can call the jury back at their own request or he may do so on his own volition. Caston v. State, 31 Texas Crim. Rep., 304.

The charge of the court is in all respects correct, except perhaps it does, as appellant insists, go beyond the questions asked the court by the jury. In other words, when the jury returned into court they propounded to the court certain questions. The court answered those questions and then goes beyond those questions in explaining the law to the jury. This under the law last cited was correct. There is no other question discussed in appellant's motion for rehearing.

The motion for rehearing is overruled.

*Overruled.*