## HENRY THOMAS v. THE STATE.

### No. 8892.    Delivered April 1, 1925.

Rehearing denied May 6, 1925.

#### 1.—Murder—Change of Venue—Properly Denied.

Where appellant filed a motion, supported by his own affidavit for a change of venue, without compurgators, as the law requires, and on the hearing of his said motion no testimony was offered to sustain it, the court properly overruled same.   Art. 628, C. C. P. Following Mitchell v. State, 43 Texas, and other cases cited.

#### 2.—Same—Jury—Summoning Talesmen—No Error Presented.

After exhausting the special venire the court instructed the sheriff to have two deputies named, who had been regularly sworn, to summon thirty talesmen, who were summoned and appeared the following morning. Appellant's challenge to this array was properly overruled, no showing that any of such jurors were prejudiced nor that there was any irregularity in the manner of their being summoned, being disclosed in the record.

#### 3.—Same—Evidence—Non Expert—On Wounds.

Where the evidence shows that immediate death resulted from wounds inflicted upon deceased by a knife in the hands of appellant, no reversible error is shown in permitting a witness, who had not qualified as an expert to testify that the knife wounds found on the body of deceased caused his death. Following Waite v. State, 13 Tex. C. A. 169 and other cases cited.

#### 4.—Same—Evidence—Cross-Examination—Leading Question.

On cross-examination of a witness leading questions are proper, and the objections of appellant that the State was permitted to ask him leading questions on his cross-examination are without merit.

#### 5.—Same—Juror—Challenge for Cause—Properly Overruled.

After his peremptory challenges had been exhausted, appellant challenged the jurors B. B. Brown, Vivian, Moore, and Smith, for cause.   In appellant's *voir dire* examination of said jurors, nothing was elicited showing such jurors to be biased or prejudiced against him, and the challenges were over-ruled.   We hold that the learned trial judge was guilty of no abuse of his discretion in holding the jurors qualified.

#### 6.—Same—Sentence—Reformed.

The judgment and sentence not conforming to our statutes, will be corrected so as to read that appellant be confined in the penitentiary for not less than five years nor more than life, and thus reformed, the judgment is ordered affirmed.

Appeal from the District Court of Nueces County.   Tried below before the Hon. A. W. Cunningham, Judge.

Appeal from a conviction of murder; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*J. C. Scott*, for appellant.

*Tom Garrard*, State's Attorney, and *Grover C. Morris*, Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Appellant is under conviction for the murder of John Greenwood with punishment assessed at confinement in the penitentiary for life.

The parties to the homicide are negroes. The evidence discloses that although appellant was a married man about three years prior to the homicide he had deserted his wife and maintained adulterous relations with one Lillian Henderson. This continued up to some three or four months prior to the killing when Lillian declined longer to maintain such relations. About a month before the killing she had commenced receiving attention from deceased. Appellant told him if he ever caught him on the street with the girl he would kill him. He had made similar statements to her. He also told other witnesses if deceased did not quit going with the girl appellant would kill him if he was ever caught on the street with her. On the night of the homicide Lillian Henderson had gone to a picture show. Appellant and deceased were both there. When the girl came out of the show she and deceased started off together. Appellant asked whom she was going home with to which she replied that she was going with Greenwood. The girl's evidence as to what then occurred is substantially as follows: That appellant followed down the street behind her and deceased and said to the latter, "Johnnie, remember what I told you, if I ever caught you on the street with this girl I would kill you," to which deceased replied "All right, Henry I will give you the privilege of doing what you said you would do;" that as they were going down the street she saw another negro hand appellant a knife and said to him, "You had no right to give Henry that knife;" that both appellant and the other negro denied that a knife had passed from one to the other; that as they approached the intersection of Leopard and Broadway streets she suggested to deceased that they go on down town; that appellant in reply to this suggestion said, "You are not going down town;" that deceased said, "We will go;" that immediately upon deceased making this statement appellant stabbed him over the heart; that at the time deceased was standing still making no demonstration or movement of any kind towards appellant; that after appellant stabbed deceased he fell with appellant on top of him; that appellant was cutting deceased but witness did not know how many times; that after deceased got on the ground appellant was sitting on him continuing to cut him. This witness says deceased was armed with a pistol at the time as the wind had blown his jumper aside as they were walking along and she had seen it sticking in

the waistband of his trousers. A witness who was driving a truck passed the point at which the killing occurred. He testified that appellant apparently was holding deceased· by the · clothing and continually stabbing him with a knife; that so far as he could see deceased was making no resistance; that his head was sagging forward as though he was about to fall. Another witness heard the commotion but did not reach the scene of the killing until after the parties were on the ground. He said appellant was sitting on deceased and apparently boring the knife into him; that deceased was making no resistance and appeared to be lifeless at the time. Dunn, the undertaker who examined deceased's body, described the wounds as follows:

"The second finger of the left hand was half severed; the bone was cut half in two; there was a hole through and through the hand, between the thumb and the main part of the hand; there was a wound through the forearm, I don't remember whether it was through and through or not, but in the forearm of the left arm; there was one deep wound just above the heart, and severed one rib, I think it was the third rib; that wound penetrated either the upper part of the heart or the aorta which is the big artery leading from the heart carrying all the blood that goes into the body. There were two deep wounds just to the left of the backbone and over the kidneys in the back about an inch and a half apart; and then there were I think four or five shallow wounds; that is, wounds that just pierced the skin, one I think in the region of the left shoulder blade; I am not positive about these wounds because as a rule in making an examination of a body I do not pay much attention to wounds that would not have been serious if there had been no others. I would say I found nine or ten wounds about,. all together, more or less."

Appellant admitted the relations which had existed between Lillian Henderson and himself, but denied making any threats against deceased to kill him if he did not cease his attentions to her. He testified that when they came out of the picture show he said to deceased, "You know what I told you the other night if I caught you with my old lady I am going to see who is the best man, me or you," to which deceased replied, "All right, you have got the privilege to· do it to-night;" that the three of them walked on down the street; that deceased stopped and put his hand on his pistol and said, "G— .d— you, if you want to do anything to me you can do it;" that he told deceased he had him "bested" and threw back his jumper to show deceased he had no pistol; that he did not see deceased's pistol but was sure from his actions at the time that he had one; that when they got to the intersection of Leopard and Broadway streets Lillian said something about going on down town, to which appellant says he replied, "We will all

three go down;'' that deceased then said, ''G— d—, we don't go together down through town;'' that at this time deceased struck appellant in the neck with his fist and reached for his pistol; that appellant then stabbed him with a knife; that they begun wrestling in the street and that he continued to cut deceased but did not know how many times. Appellant admitted that another negro had given him a knife after the three of them left the picture show and that he had it in his hand at the time the difficulty started; that deceased had kept his hand on his pistol and that he (appellant) had kept the knife in his hand. Appellant says that when he first struck deceased with the knife he did not fall but dropped his pistol, grappled with appellant and threw him on the ground; that deceased at first was on top of appellant; that he finally turned him over and got on top of deceased. He said if he had not been afraid deceased was going to hurt or kill him that he would not have killed deceased; that his intent was to have a fist fight with him.

Application for change of venue was filed, it being alleged that a great prejudice existed against appellant in Nueces County; also that there was a dangerous combination against him instigated by influential persons. The application was sworn to by appellant alone, it being alleged that the prejudice was so great that it was impossible for him or his attorney to get two credible persons in the county to verify it. The court would have been justfied in striking out the application because not in compliance with Art. 628, C. C. P. under the authority of Mitchell v. State, 43 Texas 512, O'Neil v. State, 14 Texas Crim. Rep. 588, Gibson v. State, 53 Texas Crim. Rep. 360, 110 S. W. 41, Macklin v. State, 53 Texas Crim. Rep. 197, —— S. W. ——, and other cases collated under Sec. 289, page 178, Branch's Ann. P. C. Notwithstanding the application was not supported by compurgators the State filed a controverting affidavit. No witnesses were called by appellant to sustain the allegations in his motion. The State presented three witnesses whose testimony appears in the record. Their evidence does not support the allegations of prejudice and a dangerous combination of influential persons, but is all to the contrary. The court certified in his explanation to the bill that—

''No statement was ever made to the court that any effort had ever been made to obtain evidence, and no attempt was made to offer evidence in support of said application. I now certify that during the whole trial from selecting the jury to the verdict there was not the slightest indication of prejudice that I could see, nor even of unusual public interest in the case.''

Under the circumstances shown the court properly overruled the application for change of venue.

It appears from bill of exception number two that only seven jurors were obtained from the special venire. The bill recites that the judge directed the sheriff to notify by telephone his deputies at Robstown and Bishop to summons thirty talesmen to appear in court the next day; that appellant objected to this order on the ground that it was not legal or proper to direct the sheriff to select prospective jurors from these two localities, but that they should be selected generally from the county without instruction or direction from the judge as to where they should be obtained. The bill further recites that thirty talesmen appeared the next morning who had been summoned by the deputy at Bishop and that all of the prospective jurors lived in that town. When the jurors appeared appellant filed what he calls a motion to quash the panel but which in reality appears to be a challenge to the array of the additional jurors based upon Art. 680, C. C. P. Appellant alleges in this motion that the additional jurors had been summoned from a locality where a strong prejudice existed against appellant and that said two communities were dominated and controlled by what is known as the Ku Klux Klan which was alleged to be very bitter and hostile against appellant and others of the negro race. The bill as drawn really complains of two matters incident to the court's ruling relative to talesmen and might be dismissed from consideration for that reason, but on account of the severe penalty inflicted we are considering it. The complaint urged in the motion to quash (or in the challenge to) the array of jurors summoned by the deputy raised an issue of fact. In no way did appellant undertake to verify this matter when the motion was presented to the court. The only evidence contained in the record is that of the judge himself who testified as follows:

"In the presence of the defendant and his counsel, on yesterday afternoon, I instructed the officer of the sheriff's office here to summons thirty men, qualified jurors from any part of the county where he could find jurors; having previously sworn in the deputy at Bishop and also at Robstown. The deputy sheriff, the sheriff's officer was directed to have these two men summons a special venire, as they were the deputies previously sworn in by the court to summons talesmen when required. As to whether I directed him to summons them from Robstown and Bishop, I made the statement in open court, when counsel asked me yesterday evening, if I was ordering these jurors summonsed from any special part of the County — I stated to the officer to direct these deputies to summons the thirty men, qualified jurors, that they might find in Nueces County, and that statement was made to the officer in open court in presence of defendant and his counsel."

The judge's evidence is to the effect that the two deputies mentioned in the bill had at a prior day of the term been sworn as required by Art. 5170, R. C. S. relative to summoning additional jurors who

might be needed during the term of court at which this case was tried; that his instruction to the officer waiting upon the court was to direct these deputies who had already been sworn to summon the additional number of jurors thought to be necessary to complete the panel in the present case. It does not appear that he judge directed the summoning of the jurors from any particular locality. In this regard the recitals in the bill are not sustained by the testimony. The fact that the deputy may have chosen to summon the jurors from one particular neighborhood would not in any manner militate against the order of the court directing the summoning of qualified jurors who might be found in the county. There being no verification of the ground set up by appellant in his challenge to the jurors so summoned, and the explanation of the judge in his testimony herein set out is such that we discern no error in the action of the court in either particular complained of.

Dunn, the undertaker who described the wounds on deceased's body, testified that he was not a physician, but was a "graduate of the State of Texas in matters of that respect;" that he had twenty years' experience in viewing the bodies of men who had been killed, and had experience in examining men killed with knives, and the effect of cutting. After so testifying and after describing the wounds, over objection of appellant he was permitted to further testify that the knife wound over the heart between the second and third ribs caused the death of Greenwood; and further, that the knife identified as the one used by appellant would, in the hands of a strong man, be a deadly weapon; that it was a large, heavy knife with a blade about two and three fourths inches long. The matters thus complained of are presented by bills numbers three and four, the objection in each instance being that it called for an opinion of the witness regarding matters about which he was not shown to be qualified as an expert, and as to the character of the knife, that the evidence was incompetent. The last objection appears to be answered against appellant's contention by Waite v. State, 13 Texas Crim. App. 169; Hardin v. State, 51 Texas Crim. Rep. 562, 103 S. W. 401; Svidlow v. State, 90 Texas Crim. Rep. 510, 236 S. W. 101. Under the facts in the record we think it unnecessary to discuss the question of the witness's qualifications to speak as an expert. The evidence shows that immediate death resulted from the wounds inflicted with the knife, and the wounds described leave no doubt that the knife was a deadly weapon. The jury could have reached no other conclusion than that the wound in the region of the heart was the cause of instant death. So, if the opinion expressed by the witness should not have been admitted, it is not such error as would demand a reversal. No instructions were given the jury under Art. 1147, P. C., relative to presumptions from the character of weapon used by appellant, and none were requested. The charge as originally

prepared seems to have contained some such reference. In the written objections to the charge it appears that such instructions contained a literal copy of Art. 1147 P. C., but objection was made thereto for various reasons. In response to said objection the court evidently eliminated this clause from the charge. The testimony of Dunn, to which objection was urged, went to the issue thus eliminated at the suggestion of appellant himself, hence he has no just complaint.

No error is found in the matter complained of in bill of exception number five. Lillian Henderson had testified that appellant had told her he was going to kill deceased if he (appellant) ever caught deceased out with her. It was permissible for the district attorney to ask appellant whether he had made such threat. The objection that the question was leading has no force. Appellant was upon cross-examination, and leading questions were proper.

It appears from bills of exception numbers six and seven that certain question were asked the witness Davis relative to the reputation of appellant. Objections were interposed to the form of the question and were sustained. The bill bringing the matter forward is qualified by the judge in a statement that the witness was finally permitted to answer the questions and we are referred to the statement of facts. An examination of the statement of facts reveals that the witness testified fully relative to the matter.

Bill of exception number eight reveals that B. S. Brown was one of the thirty additional jurors summoned under the direction of the court. Upon his voir dire examination the prospective juror testified as follows:

"I belong to the Ku Klux Klan, the best friends a good negro ever had. I am a 100% Ku Klux, and it is no more my duty than the duty of any other good citizen to assist in the enforcement of the law. There are some of the Ku Klux who are not good citizens. I don't know, I couldn't answer for them. I try to be one, though. It takes an awful good man to be a good Ku Klux. As to whether we have some bad men in there, all organizations have them — even churches. I have no more inclination than any other law abiding citizen to assist in the prosecution of a man accused of a crime. I do not at all feel constrained to help out the District Attorney in an effort to secure the conviction, unless he has got the evidence to convict him with. I have no prejudice only for the law enforcement. As to why not leave that to the court, that is what we was doing, what I want to do. That is our motto — leave it to the court. As to whether I want to help the court, a juror is a part of the court. I want to help the court in a way, whether he is guilty or not. The Ku Klux have got no enmity against a man if he is not guilty — none whatever.''

Upon the conclusion of the examination appellant's attorney objected to the juror upon the ground that he was "disqualified on account of his association that would cause him to unconsciously have a prejudice against this defendant." The challenge for cause was overruled. Appellant's peremptory challenges having been exhausted the juror was sworn and served upon the jury. Unless such prejudice is disclosed from the examination of the juror himself or is otherwise made to appear from the bill we must presume the action of the court in overruling the challenge was correct. There is nothing in the testimony of the juror indicating that he was prejudiced either against appellant or his case and no other evidence to that effect appears in the bill. We therefore hold that the learned trial judge was guilty of no abuse of discretion in holding the juror qualified.

Bills numbers nine, ten and eleven present the same question as to the jurors Vivian, Moore and Smith. We do not set out their testimony upon voir dire examination as incorporated in the bills, but it is practically the same as that of juror Brown shown in bill eight. We find nothing in any of such bills which shows prejudice on the part of the jurors against appellant or his case.

Bill number twelve presents the same question already discussed in disposing of bill number two, and contains practically the same qualification. It presents no error.

There is an exception to the charge on self-defense on the ground that it required the jury to believe that deceased had made an actual attack on appellant. If there was basis for such exception at the time it was presented the court evidently corrected his charge, for an examination of it reveals that the jury were told if they believed deceased had made an attack upon appellant, or from the words, acts or conduct of deceased, if any, appellant believed deceased was about to attack him in such manner and character as caused him to have a reasonable expectation or fear of death or serious bodily injury they should acquit him, or if they had a reasonable doubt upon such issue, they should give defendant the benefit of the doubt and find him not guilty. This charge presented appellant's issue of self-defense in a full and pertinent manner leaving no ground for complaint.

We have considered and discussed all bills of exception appearing in the record together with objections to the court's charge. No error calling for a reversal has been detected. We observe, however, that the judgment and sentence condemns appellant to confinement in the penitentiary for life, overlooking the application of the indeterminate sentence law. The judgment and sentence in that respect will be corrected so as to read that appellant be con-

fined in the penitentiary for not less than five years nor more than his natural life.

As thus reformed the judgment is ordered affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant's motion is based chiefly on contentions which find support in his testimony alone. A careful review of the evidence introduced by the State makes plain the proposition that if the jury accepted as true the testimony of the witnesses against appellant, then they could not give credence to his story. It is the jury's province to reconcile conflicts in the testimony if possible, and if they cannot, then they have the right to believe that which they deem most worthy. The fact that they do not accept as true the testimony of the defendant, who has every interest in the case which ordinarily affects and warps human testimony, seems well within their right. We regret that we cannot agree with distinguished counsel for appellant in his criticisms of the testimony. As we view it the verdict finds ample support.

The motion, resting only on the insufficiency of the testimony, and not being in accord with the proposition, will be overruled.

*Overruled.*