## ANDY McAFEE v. THE STATE.

No. 14087.   Delivered April 15, 1931.
State's Rehearing Granted December 23, 1931.
Appellant's Rehearing Denied May 25, 1932.
Reported in 49 S. W. (2d) 809.

The opinion states the case.

*R. P. Moreland,* of Plains, for appellant.

*T. L. Price,* District Attorney, of Tahoka, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Offense, theft of chickens; punishment, one year and one day in the penitentiary.

The only matter presented to this court in this case is the sufficiency of the evidence to support the conviction.

The party complaining to have lost the chickens testified that he was acquainted with the appellant and lived about two miles east of him; that on or about the 25th day of April, 1930, he lost about 165 baby chickens, something like three weeks old; that they were white leghorn baby chickens, and some of them were runt chickens; that about five of those were missing and that one of them was a little one that had not grown at all and his head was as big as his body.  He testified that he did not have any of these chickens marked in any way; that he had gotten the chickens from Chisholm's Hatchery and had them about three weeks when they were taken; that, when he missed them, he drove around over the country trying to locate them, and that he located them at appellant's home; that

they were running around in the yard at the appellant's place with a lot of Rhode Island red chickens; that he recognized his chickens and then went to Brownfield and had a warrant sworn out to search the appellant's premises; that the sheriff and two others, one of whom was the sheriff of Yoakum county, went out with him; that he recognized about 152 chickens that belonged to him; that they brought away about 160, but seven or eight of them he did not claim.

This was the only evidence offered by the state as to the identity of the chickens claimed to have been lost by the complaining witness.

The appellant contended that he purchased the chickens from the Chisholm Hatchery on April 4th; that he purchased on that date from said hatchery, 300 baby chickens, 100 being Rhode Island reds and 200 being white leghorns; that the white leghorns were about two weeks old and the reds about one day old; that the chickens that the complainant claimed and took from his house had been in appellant's brooder house ever since he had gotten them. As to the purchase of 300 chickens from the hatchery on April 4th, the owners of the hatchery testified that on April 4th their books showed that the appellant did purchase 300 chickens from them and that their books showed and their recollection was that all of the 300 chickens purchased on that day by the appellant were Rhode Island reds. The appellant was corroborated by two witnesses to the fact that on April 4th he carried home with him from the hatchery 100 reds and 200 white leghorns; that the white leghorns were about two weeks old and that the reds were little baby chicks. Witnesses C. M. Roberts and his wife both testified that they lived 300 or 400 hundred yards from where the appellant lived; that on April 4th the appellant brought out to his place about 200 white leghorns which looked to be about two weeks old, and that they saw them on the morning of April 5th, and that they were positive about the date. Three or four other witnesses testified that they were at the appellant's home on the first Sunday in April; that they observed the appellant's chickens and saw that he had a large number of white leghorn chickens and had them in his pens around the brooder house. One of them testified that he was there when the sheriff came and got the chickens, and that they were the same chickens that he had seen there. In addition to said testimony of the other witnesses, Hugh Snodgrass testified that he lived in Yoakum county and lived two and a half miles from the appellant; that he was tax assessor of Yoakum county; that, in the early part of April, he was out electioneering, and about April 8th went by the appellant's home; that the appellant was out in the brooder house at work and that he went out to the brooder house to talk to him and observed appellant's chickens and remarked that they were a very thrifty bunch of chickens; that the big end of them were red, but that there was a bunch of white chickens in there; that the little house was full, and that he judged there

were about 350; that he did not undertake to estimate what percentage of them were white, but that he remembered that there was a bunch of white chickens, and that they were mixed with the reds.

The state depended in this case for a conviction on circumstantial evidence, and the trial court so charged the jury. A conviction for theft based on circumstantial evidence will not be sustained if the testimony does not exclude every other reasonable hypothesis except that of the defendant's guilt. Branch's P. C., sec. 2485; Tollett v. State, 44 Texas, 95; Hernandez v. State, 43 Texas Crim. Rep., 80, 63 S. W., 320; Yarbrough v. State, 69 Texas Crim. Rep., 150, 151 S. W., 545; Rios v. State, 69 Texas Crim. Rep., 233, 153 S. W., 308. The identity of the chickens that were alleged to have been stolen from the complaining witness was vital to the state's case, and the burden of proof was on the state to show beyond a reasonable doubt that the chickens found in appellant's possesion were the chickens alleged to have been stolen. Hunt v. State, 89 Texas Crim. Rep., 404, 231 S. W., 775. The only evidence of the identity of the chickens alleged to have been stolen was that of the prosecuting witness. What circumstances will amount to proof can never be a matter of general definition. The legal test in a case of circumstantial evidence is the sufficiency of the evidence so that it will exclude every other reasonable hypothesis except that of defendant's guilt. It is possible that the chickens found in possession of appellant were the chickens lost by the complaining witness, but the evidence in this case in our opinion shows that it is equally as possible or even probable that they were not.

The evidence is not sufficient to authorize a conviction under the law of circumstantial evidence. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Responding to the state's motion for rehearing, we have carefully analyzed the facts of this case.

The issue before the jury was the sufficiency of the testimony to identify certain chickens found in appellant's possession the second day after their disappearance from the premises of Pfrimmer, the alleged owner. Incidentally, another fact issue was the explanation made by appellant of his possession of said chickens. These were both jury questions, and the rule adhered to with uniformity in this state is,—that the court will not disturb the finding of the jury on fact issues if there be

evidence to support same. Page v. State, 114 Texas Crim. Rep., 431, 25 S. W. (2d) 840; Bevins v. State, 110 Texas Crim. Rep., 52, 7 S. W. (2d) 532; Fetters v. State. 108 Texas Crim. Rep., 282, 1 S. W. (2d) 312; Anderson v. State, 113 Texas Crim. Rep., 216, 18 S. W. (2d) 675; Stewart v. State, 71 Texas Crim. Rep., 480, 160 S. W., 381; Gill v. State, 84 Texas Crim. Rep., 531, 208 S. W., 926; Jacobs v. State, 92 Texas Crim. Rep., 361, 243 S. W., 911.

Our statute,—article 657, C. C. P.,—in terms makes the jury the exclusive judges of the facts, and, when the state's proof, if believed, makes out a case, this court will not reverse because of mere conflict of testimony. Decisions to this effect are uniform and too numerous to need citation. We call attention to a few: Wharton v. State, 45 Texas, 2; Trinkle v. State, 59 Texas Crim. Rep., 257, 127 S. W., 1060; Jacobs v. State, 84 Texas Crim. Rep., 564, 208 S. W., 917; Cone v. State, 89 Texas Crim. Rep., 587, 232 S. W., 816; Thomas v. State, 100 Texas Crim. Rep., 114, 272 S. W., 149; Martin v. State (Texas Crim. Rep.), 182 S. W., 1119. Some of the cases cite the additional reason that this court must give consideration to the fact that the trial judge heard and saw the witnesses and overruled the motion for new trial based on the proposition that the evidence was not sufficient. We always give weight to the fact that he is in a better position than we are, being somewhat akin in his attitude to the jury, which has before it the witnesses and can note their demeanor and manner of testifying.

Pfrimmer, the alleged owner of the chickens in question, swore: "I recognized about 152 chickens that belonged to me. They brought back about 160, but seven or eight I did not claim. * * * Mr. McAfee, the defendant, claimed the seven or eight belonged to me also. * * * I am positive that these were *your* (it is evident that the stenographer intended to say *my*) chickens that I recovered from the home of Andy McAfee." The jury had a perfect right to believe and accept as true the testimony of Mr. Pfrimmer, and they undoubtedly did so.

Aside from this, we have the fact that appellant took the stand in his own behalf and swore that he bought 200 white leghorn chickens from the Chisholms on April 4th, just before Mr. Pfrimmer lost his chickens on April 25th, and that the chickens identified by Pfrimmer and taken by the sheriff from appellant's possession were these same white leghorn chickens referred to by appellant. Appellant also swore that he had kept these chickens in his brooder house from the time he bought them from Chilholms until they were taken by the sheriff. He also said that the white leghorn chickens bought by him from the Chisholms on April 4th were the only white leghorns he had. He also denied having gone to the Chisholms after his arrest and claimed to them that he bought the chickens in question on April 13th. Being shown a written and sworn statement made by him after his arrest for this offense, appel-

lant was asked if he did not state therein as follows: "I had bought on the 13th of April; my stepmother went out and stayed all night with us on the 13th of April; we counted out 168 of these chickens," but replied that he said it was about that time; that he thought it was about that time, but he now knew it was on April 4th that he bought 100 reds and 200 white leghorn chickens from the Chisholms. The written statement sworn to by appellant was dated May 1st, and in it he said nothing about buying 100 red chickens from the Chisholms.

The state introduced the Chisholms, father and son, who testified that they ran a chicken hatchery in April, 1930. Henry Chisholm swore that on April 4th he sold appellant only red chickens as shown by the entry on their books, and that his memory was to the same effect, and that there were no white leghorns among the chickens then sold appellant. He said he made the entries, in their books, of said sale. G. W. Chisholm swore that they did not sell appellant any white leghorn chickens. Clements, who worked for the Chisholms, and was present on April 4th when appellant bought chickens, swore that they sold him red chickens, and did not sell him any white leghorns. He said they tried to sell him white chickens but he would not buy them. The books of this business were produced in court and showed that on March 14, 1930, appellant bought 300 red and brown chickens, large chickens; also said books showed that on April 4th said parties sold appellant 200 master bred red chickens for $32. Both of the Chisholms and their clerk, Mr. Clements, as above stated, testified that appellant bought no white chickens from the hatchery on April 4th. The entry on the books showed the sale on April 4th to appellant of 200 red chickens. The state introduced Mr. Telford, the sheriff of the county, who testified that he went to appellant's place in the latter part of April looking for Pfrimmer's chickens; that while there he saw defendant's witness Roberts at his barn and talked to him, and asked him if he knew anything about McAfee's chickens, and that Roberts said, "No, I am farming and don't pay any attention to chickens." Roberts said nothing about appellant having any white leghorn chickens about three weeks old. Appellant told witness at said time that he got the chickens at Chisholms and had had them a good while and paid ten cents each for them, but said nothing about buying red chickens at the same time. Mr. Telford further testified that Pfrimmer was with him at the time and identified these chickens as his. Both Pfrimmer and the sheriff contradicted appellant in his statement that the chickens taken by the sheriff were kept in a brooder, both saying that they were in a dugout and were dirty when recovered. Appellant introduced the witness Roberts, above referred to, who testified that he knew appellant bought about 200 white leghorn chickens and 100 red chickens on April 4th, saying he got them from the Chisholms. Appellant introduced two witnesses who lived on his father's farm near appel-

lant's home who undertook to say that appellant had a number of white leghorn chickens which he said he bought from the Chisholms. Appellant also introduced his stepmother who said she helped him load some white leghorn chickens at the Chisholms on April 4th; also another witness who testified that she saw appellant with a number of chickens, the number stated by him to her being 350, early in April, and that his stepmother was with him at the time.

It appears plain from a perusal of the testimony that that given by appellant and his witnesses was contradicted by the state witnesses, and was in some measure self-contradictory. This fact is mentioned, not to shed light upon the rule above stated authorizing the jury to reconcile conflicts in testimony, and that their conclusion will be binding upon this court, but to make manifest the fact that the jury, in the case before us, were entirely justified and supported in reaching such conclusion.

The only question in the record for review being that of the insufficiency of the testimony, we have concluded upon mature reflection and a careful analysis of the facts that we were in error in directing a reversal of this case.

The state's motion for rehearing will be granted, the judgment of reversal set aside, and the judgment of the trial court will be affirmed.

*Affirmed.*

ON APPELLANT'S MOTION FOR REHEARING.

MORROW, Presiding Judge.—The evidence of the identity and ownership of the chickens found in the appellant's possession is conflicting. The question on this appeal seems not so much the sufficiency of the evidence as the credibility of the witnesses. The testimony of the state's witnesses, if believed, supports the verdict, while the testimony of the appellant and his witnesses, if found true, would require his acquittal. The settlement of the issue by the jury, directed by proper instructions from the trial court, is deemed binding upon this court.

The motion for rehearing is overruled.

*Overruled.*